IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DERRICK DILLARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | A-14-CV-0007-ML |
| | § | |
| | § | |
| CITY OF AUSTIN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING SUMMARY JUDGMENT**

Before the Court are Defendant's Motion for Summary Judgment [Dkt. #27]; The City of Austin's Amended Motion for Summary Judgment and Brief in Support [Dkt. #28]; Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Dkt. #33]; The City of Austin's Reply in Support of Its Motion for Summary Judgment [Dkt. #34]; and Plaintiff's Summary Judgment Sur-Reply [Dkt. #38].

On February 11, 2015, the parties to the above-styled cause filed their Notice, Consent, and Reference of A Civil Action to A Magistrate Judge [Dkt. #20]. The parties have hereby consented that the undersigned United Magistrate Judge shall conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Rule 1(i) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. This case was reassigned from United States District Judge Lee Yeakel to United States Magistrate Judge Mark Lane for all purposes on February 13, 2015. [Dkt. #21].

After having reviewed the applicable law, the motions and related briefing and evidence (including exhibits filed under seal due to the personal medical information contained therein),

1

and the case file as a whole, the undersigned GRANTS The City of Austin's Amended Motion for Summary Judgment [Dkt. #28] for the reasons outlined below.

I.   **BACKGROUND**

Plaintiff Derrick Dillard ("Dillard") was hired in 1998 as a Public Service Worker 1 in the City's Public Works Department ("PWD" or "Public Works"). Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. F, Sheppard Aff. at ¶3. Dillard was promoted to the positon of S&D Maintenance Senior in August of 2008, pursuant to a mediated settlement agreement following his filing of an EEOC charge alleging race discrimination. Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. P, Dillard Depo. at 218:25. Dillard held this position until March 31, 2011, when an on-the-job vehicular accident caused multiple injuries that rendered him unable to work until May 2, 2012. Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. A, Mata Aff. At ¶¶ 7-8, Ex. P, Dillard Depo. at 89:19-23.

On April 26, 2011, Dillard was placed on FMLA Leave. Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. B, Pool Aff., Attachment 1 (FMLA letter). The City's letter to Dillard placing him on FMLA leave explained that the FMLA provides 12 weeks of unpaid leave per calendar year for medical reasons. *Id.* Though Dillard's medical absence from April 26, 2011 onward counted towards the 12 weeks available under the FMLA, Dillard had a "wage continuation benefit" that allowed him to continue collecting his normal salary during this time. *Id.*; *see also* Ex. F, Sheppard Aff., at ¶ 9.

Also on April 26, 2011, Dillard was automatically enrolled in the City of Austin's Return To Work ("RTW") Program. Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. A, Mata Aff., Attachment 1 (RTW letter). The RTW program provides 180 calendar days of assistance from the City in attempting to place an injured employee in a position the employee can perform. *Id.*

This placement assistance includes 90 days of participation in the Citywide Alternate Placement Process. *Id.* "If an alternate placement is not identified by either the end of the Citywide Alternate Placement Process or your Return to Work Eligibility Period, you will be notified that Alternate Placement Assistance has ended. The department will then determine your continued employment status with the City." *Id.* at Ex. A, Attachment 1, p. 2.

Dillard exhausted his FMLA leave on July 18, 2011. Am. Mot. Summ. J. [Dkt. #28] at 4, Ex. B, Pool Aff. at ¶ 8. Dillard's RTW enrollment (specifically, the 90-day, city-wide placement assistance portion of the program) extended another 84 days beyond the exhaustion of his FMLA leave. *See* Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. A, Mata Aff., Attachment 1 (RTW letter). Because the 180 maximum assistance period under the RTW program "includes time the employee is on limited-duty or no-duty status," Dillard's HR Supervisor, Melissa Pool, explained to Dillard that "the City would attempt to work with any physical restrictions his physicians required should he be released to limited-duty status." Am. Mot. Summ. J. [Dkt. #28] at 4, Ex. B, Pool Aff. at ¶¶ 9-10. "However, as long as he remained on no-duty status, the city's alternate placement options were very limited as he was unable to return to work in any capacity." *Id.* at ¶10. Unfortunately, Dillard exhausted his 180 days of Alternate Placement Assistance under the City's RTW Program while he was still restricted from any type of work. Am. Mot. Summ. J. [Dkt. #28] at 4, Ex. B, Pool Aff. at ¶ 9—11.

Although Dillard remained unable to return to work after he exhausted both his available FMLA leave and his RTW assistance eligibility, the City continued to keep him on the payroll and provide benefits. Am. Mot. Summ. J. [Dkt. #28] at 4, Ex. F, Sheppard Aff., at ¶ 9. In May of 2012, over a year after his medical leave of absence began, Dillard was released by his doctors to limited-duty status. Am. Mot. Summ. J. [Dkt. #28] at 4, Ex. A, Mata Aff. at ¶ 22. His

3

supervisors in the Public Works Department looked for open positions that Dillard could perform, and offered him a position in the PWD's Construction Inspection Division as an Administrative Assistant. *Id.* at ¶ 22 and Attachment 8 (Letter offering "30-day temporary limited duty assignment"). Dillard accepted the position. *Id.*

His "30-day temporary . . . assignment" was extended for a period of several months, despite repeated complaints from his supervisor, Valerie Dickens, that he was making no effort to learn skills necessary to the job, frequently arrived late and left early, was caught sleeping on the job, and used on-the-job time to play computer games and take personal phone calls despite multiple warnings from Dickens. Mot. Summ. J. [Dkt. #28] at 4-5 and Ex. C, Dickens Aff. at ¶¶ 3-12. Dickens gave Dillard written warnings regarding his conduct three times in September of 2012, *id.* at Attachment 2, 3, and 4. During his scheduled performance review, Dickens gave Dillard a performance rating of "Unacceptable" because of these issues. *Id.*, Attachment 5. Dillard was terminated from City employment on October 26, 2012. Mot. Summ. J. [Dkt. #28] at 5 and Ex. D, Lazarus Aff. ¶ 10 and Attachment 3.

Dillard brought suit on January 3, 2014, asserting failure to accommodate and wrongful termination in violation of the Americans With Disabilities Act (ADA) and Texas' parallel Commission on Human Rights Act (TCHRA). Compl. [Dkt. #1]; *see also* Am. Compl. [Dkt #2], filed March 6, 2014. Dillard originally brought additional claims of retaliation and retaliatory discharge, asserting the City's allegedly discriminatory treatment in 2012 was motivated by his 2008 EEOC charge, see Am. Compl. [Dkt. #2] ¶¶ 21-23, but has since stipulated to the dismissal of these claims. Resp. Mot. Summ. J. [Dkt. #33] at 20, n.4. Am. Compl.[Dkt. #2] at ¶¶ 14-20, Resp. Mot. Summ. J. [Dkt. #33] at 20. The City now moves for

summary judgment on Dillard's remaining claims of failure to accommodate and wrongful discharge in violation of the ADA and TCHRA.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if

no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### B. Requirements of the ADA and TCHRA[1]

Title I of the ADA prohibits an employer from discriminating against a qualified individual on the basis of the individual's disability. 42 U.S.C. § 12112(a). A "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. at § 12111(8). Discrimination under the statute includes not only adverse employment actions (such as termination because of a disability), but also the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability, unless accommodation would impose an undue hardship on the employer. *Id.* at § 12112(b)(5)(A).

Once an employee has made a request for an accommodation, "'it may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation." *Loulseged v. Akzo Nobel Inc*., 178 F.3d 731, 735 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)) (alteration omitted). It is important to note, however, that this "interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations." *Id.* at 736. In order for any alleged breakdown in the "interactive process" to constitute an alleged ADA violation, the plaintiff bears the burden to produce some evidence that

---

[1] The TCHRA is expressly intended, *inter alia*, to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 *et seq.*). TEX. LABOR CODE § 21.001(3). The TCHRA prohibits an employer from discharging or in any other way discriminating against an employee because of the employee's disability. *Id*. at § 21.051(1).

a reasonable accommodation would have been feasible if not for the employer's refusal to participate in the interactive process in good faith. *Silva*, 575 F. App'x at 424.

Reassignment to a vacant position may be a reasonable accommodation under the ADA. *Id.* § 12111(9). "The ADA, however, does not require an employer to promote a disabled employee, nor must an employer reassign the employee to an occupied position or create a new position to accommodate the disabled worker." *Munoz v. H&M Wholesale*, 926 F. Supp. 596, 608 (S.D. Tex. 1996). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Silva v. City of Hidalgo*, 575 F. App'x 419, 423 (5th Cir. 2014) (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997)). At the summary judgment stage, a Plaintiff complaining that a failure to reassign him was a failure to reasonably accommodate his disability "ha[s] the responsibility of demonstrating that he was qualified for a position, that the City knew of his interest, and that he was denied the job because of his disability." *Burch v. City of Nacogdoches*, 174 F.3d 615, 622-23 (5th Cir. 1999).

### III.   ANALYSIS

#### A.   The City Complied With Its Obligations Under the ADA and the TCHRA[2]

The City raises multiple arguments against Dillard's claims, including that he was not disabled within the meaning of the ADA. The undersigned assumes without deciding that Dillard was disabled for purposes of the ADA, because the undisputed evidence shows that the City treated him as disabled and attempted to accommodate his disability. *See Hammond v.*

---

[2] "The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). Therefore, at the summary judgment stage, federal ADA cases provide appropriate guidance for parallel state law claims under the TCHRA. *Id.*; *see also NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

*Jacobs Field Servs.*, 499 F. App'x. 377, 381 (5th Cir. 2012) (assuming disability where other steps of the discrimination analysis are dispositive).

   *1. The City Satisfied Its Obligation to Attempt Reasonable Accommodation*

Dillard asserts the City's efforts to accommodate his disability were insufficient to satisfy the ADA and the parallel TCHRA because they were mis-timed, in that the City enrolled him in its return-to-work program before he was medically cleared for work of any kind. Resp. Mot. Summ. J. [Dkt. #33] at 17-18. This argument ignores well established case law that "'[r]easonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected.'" *Silva*, 575 F. App'x. at 423-24 (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996)).

The City enrolled Dillard in the RTW program at the same time he was placed on FMLA leave. Am. Mot. Summ. J. [Dkt. #28] at 3 and Ex. A, Mata Aff., Attachment 1 (RTW letter). Dillard has produced no evidence to suggest this timing was inconsistent with the City's general policy of attempting to accommodate injured or disabled workers, or that the policy of enrolling workers in the RTW program contemporaneously with the start of the FMLA leave period was a mere pretext of accommodation. *See* Am. Mot. Summ. J. [Dkt. #28] Ex. B, Pool Aff. at ¶ 9—11. Though Dillard himself exhausted both his FMLA leave and his RTW assistance period before he was able to return to work, the undisputed evidence is that Dillard's RTW enrollment (specifically, the 90-day, city-wide placement assistance portion of the program) extended at least another 84 days beyond the exhaustion of his 12 weeks of FMLA leave. *See* Am. Mot. Summ. J. [Dkt. #28] Ex. A, Mata Aff., Attachment 1 (RTW letter). Although Dillard was not cleared for any type of duty during his FMLA leave or RTW eligibility period, he would have benefitted from the RTW program had he been cleared for some form of restricted or light duty

at any point.  *See* Am. Mot. Summ. J. [Dkt. #28] Ex. B, Pool Aff. at ¶ 9—11.   Light duty would not have allowed him to return to his former job, but as his HR supervisor emphasized, it would have allowed the City many more options for placement in the citywide RTW program.  *Id.*

Dillard nevertheless asserts the City's failure to offer him City-wide job reassignment consideration once he was able to return to light duty status was a failure to engage in the interactive process in good faith.  Resp. Mot. Summ. J. [Dkt. #33] at 14.  Again, this argument misses the point: "Because it is the aim of the ADA to merely ensure equality and not preference to disabled employees, an employer is only required to offer transfer to another facility in situations where it is the regular practice of that employer to transfer employees between facilities."  *Emrick v. Libbey-Owens-Ford Co*., 875 F. Supp. 393, 398 (E.D. Tex. 1995).  The City has introduced competent summary judgment evidence that its regular practice was to provide injured workers, through the "Return to Work" program, 90 days of city-wide transfer consideration .  Am. Mot. Summ. J. [Dkt. #28] at Ex. A, Mata Aff., Attachment 1 (RTW letter). Dillard undisputedly received 90 days of city-wide transfer consideration through the RTW program from October 13, 2011 through January 11, 2012.  Resp. Mot. Summ. J. [Dkt. #33] Ex. 2, Timeline.  Dillard has produced no evidence that the City applied its transfer policies to him in a discriminatory fashion.  *See Emrick*, 875 F. Supp. at 398.

Dillard argues this policy is facially inadequate: "The City may not simply refuse to engage in the interactive process, where all vacancies are considered, because it had already allowed Mr. Dillard to participate in the Citywide RTW program for 90 days before Mr. Dillard had been released to return to work."  Resp. [Dkt. #33] at 18.  The facts of Dillard's particular case, however, do not support his facial attack on the City's policy. Dillard admits he actually engaged in the interactive process with City representatives while he was enrolled in the citywide

RTW, "requesting an accommodation in the form of a transfer or reassignment in November 2011, when he spoke with citywide return to work coordinator Rick Thomas." Resp. Mot. Summ. J. [Dkt. #33] at 14, citing Dillard Depo. at 208:12-17, 206:24-207:3.  The City provided Dillard 90 days of preferential consideration for citywide transfers under the citywide RTW program from October, 2011, to January, 2012, well *after* Dillard had exhausted his FMLA leave and the normal 180 period for the entire RTW program.  Resp. Mot. Summ. J. [Dkt. #33] Ex. 2, Timeline.  The City's obligation to attempt reasonable accommodation for Dillard ended when he exhausted his leave and remained unable to perform any type of work.  *Reed*, 218 F.3d 477, 481 (5th Cir. 2000).  Dillard offers no reasoned justification for penalizing the City for voluntarily extending the period during which it attempted to accommodate his disability, nor any support for an argument that, once that accommodation period was extended, the City somehow became obligated to leave it open indefinitely.

To the extent Dillard is claiming the failure to consider him for city-wide (as opposed to only department-wide) positions was a failure to accommodate his disability, this argument overlooks settled law that the ADA entitles disabled persons to reasonable accommodations but not to any particular job.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007). Moreover, to the extent Dillard argues he was qualified to be transferred to a different position but was instead unfairly terminated as a result of his disability, it is Dillard's burden to establish that he was qualified for the position sought.  *Burch*, 174 F. 3d at 622-23.  Dillard has identified various positions that were open in other City departments during the time he was employed in his administrative duty assignment within the PWD.  Resp. [Dkt. #33] at 16-17 and Ex. 9, 11. But merely identifying vacant positons "fails to prove that he passed the initial threshold of demonstrating that he was qualified for any of these jobs." *Burch*, 174 F. 3d at 622-23.  The

Plaintiff's "own opinion that he could perform various jobs . . . at the time of his termination . . . is insufficient to defeat summary judgment." *Munoz,* 926 F. Supp. at 608.

Dillard contends his resume and application from March 2011 show that he meets the "minimum qualifications" posted for these jobs. Resp. [Dkt. #33] at 17, Ex. 10. But meeting the minimum qualifications of having a high school education and several years of City employment says nothing about whether Dillard is actually "qualified" for the posting. *Burch*, 174 F.3d at 622. A "'qualified individual' means an individual who, with or without reasonable accommodation, *can perform the essential functions of the employment position* that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). Dillard's assertion that he meets the "minimum qualifications" listed in the job postings is no evidence that he had the knowledge, skills, or abilities necessary to perform the essential functions of the jobs identified. Reply [Dkt. #34] at 5-6. To the contrary, the City has pointed out that the essential functions of several vacant positions required additional attributes, such as specialized licensing or prior experience in a relevant field other than Public Works, which Dillard undisputedly lacks. *Id.* (citing Resp. [Dkt #33] at Ex. 9, 10).

Dillard argues that, because the City was willing to place him in a Public Works Department administrative position for which Dillard required additional training on keyboard skills, the City should have been willing to place him in other jobs in completely different fields—such as Fingerprint Technician or 911 Call Taker—"with the hope that he would be able to learn the job through a combination of on-the-job and formal training." Surreply [Dkt. #38] at 7. The ADA requires no such thing. "Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Rogers*, 87 F.3d at 759-60 (quoting

*Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). Dillard has offered no evidence to suggest that, at the time he requested consideration for city-wide reassignment, he could have presently or in the immediate future obtained any necessary certifications, licenses, or specialized training to perform the essential functions of the jobs he identified as desirable alternative placements. *Rogers*, 87 F.3d at 759-60. Therefore, he has not established the City failed to accommodate him by failing to consider him for those jobs. *Burch*, 174 F.3d at 622.

In short, Dillard's failure to accommodate claim fails on multiple grounds. The City was not required to consider Dillard for city-wide transfer opportunities months after his available leave expired. *Reed*, 218 F.3d at 481. Nor was the City required to provide Dillard the position of his choice. *Jenkins*, 487 F.3d at 316. Finally, Dillard has failed to introduce any facts that would suggest he was qualified to perform the essential functions of the alternative placements he desired. *Burch*, 174 F.3d at 622. Dillard has offered no case law or statutory authority for his argument that the City violated the ADA by exercising its discretion to offer Dillard many months more leave than any federal or state statute required and to reassign him to a sedentary job consistent with his physical limitations within his home department upon his return to work. The City is entitled to summary judgment on this claim.

> **B.   The City Had a Non Discriminatory Business Reason to Terminate Dillard**

It is undisputed that Dillard experienced serious performance issues in his alternative placement once he returned to work. Resp. [Dkt. #33] at 12-13 and Ex. 7, Dickens Depo at 17:6-18:5. Though Dillard claims the interactive process should have continued and the City should have tried to find him an alternate placement where his performance deficiencies would have been mitigated, "courts have recognized that an accommodation that requires an employer to ignore prior misconduct, including a violation of an attendance policy, is not the kind of

reasonable accommodation mandated under the ADA." *Green v. Medco Health Solutions of Tex., L.L.C.*, 560 F. App'x. 398, 402 (5th Cir. 2014). "Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 701-02 (5th Cir. 2014).

Dillard does not dispute his history of attendance problems and use of company time for personal business. Resp. [Dkt. #33] at 12-13 and Ex. 7, Dickens Depo at 17:6-18:5. Dillard has not established that any other employees were excused such conduct. *Green*, 560 F. App'x. at 402. Nor has Dillard presented any evidence to suggest that his disability (as opposed to City policies regarding attendance and job performance) was a motivating factor in his unsatisfactory performance rating or termination. *Maples v. Univ. of Tex. Med. Branch at Galveston*, 524 Fed. Appx. 93, 95 (5th Cir. 2013). Therefore, he has not raised a material fact issue to support his claim of wrongful termination. *Id.*; *see also LHC Group*, 773 F.3d at 701-02. The City is entitled to summary judgment on this claim.

## IV. CONCLUSION

In accordance with the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Dkt. #27] is DISMISSED AS MOOT in light of the City's amended filing;

**IT IS FURTHER ORDERED** that the City of Austin's Amended Motion for Summary Judgment and Brief in Support [Dkt. #28] is **GRANTED**;

**IT IS FINALLY ORDERED** that all claims brought by Plaintiff Derrick Dillard against the City of Austin are hereby **DISMISSED WITH PREJUDICE,** and any motions that remain pending in this case are **DISMISSED AS MOOT.**

SIGNED July 22, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE